**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

**LECO PROPERTIES LLC**                    **CIVIL DOCKET NO. 6:24-cv-1177**

**VERSUS**                                 **JUDGE DAVID C. JOSEPH**

**CITY OF KAPLAN, ET AL.**                 **MAGISTRATE JUDGE CAROL B. WHITEHURST**

### MEMORANDUM RULING

Before the Court are cross-motions for summary judgment: (i) a MOTION FOR SUMMARY JUDGMENT [Doc. 15] filed by Plaintiff LECO Properties, LLC ("LECO"); and (ii) a MOTION FOR SUMMARY JUDGMENT [Doc. 19] filed by Defendants the City of Kaplan, Michael Kloesel, and Michael Renfrow (collectively, "Defendants"). Both motions are opposed. [Docs. 26, 27]. For the reasons that follow, Defendants' Motion is GRANTED and LECO's Motion is DENIED.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This lawsuit arises out of a zoning dispute involving the Legion Park Subdivision ("Legion Park") in Kaplan, Louisiana, and the application of the Kaplan City Zoning Ordinances to LECO's property. At all times relevant to the litigation, Kaplan's R-2 Residential District classification ("R-2") permitted house trailers or mobile homes to be used as dwellings, while an R-1 Residential District classification ("R-1") did not. [Doc. 19-3, pp. 62-63].

In 2022, Ricky LeBlanc ("LeBlanc"), a 50% owner of LECO, sought to develop a mobile home subdivision on the Legion Park property and approached Gene Sellers, an Abbeville engineer and surveyor whose company, Innovesters, Inc. ("Innovesters"),

Page 1 of 22

owned the property.  [Doc. 19-4, p. 4].  Because the sale of the property was dependent on re-zoning the property from an R-1 classification to an R-2 classification, LeBlanc requested that the City consider re-zoning the property to allow for the mobile home development.  [*Id.*, p. 5].  On May 19 and 25, 2022, the Kaplan Planning and Zoning Committee (the "Zoning Committee") held public meetings where the re-zoning of Legion Park was discussed.  [Doc. 19-3, pp. 19-22].  Both LeBlanc and Sellers were present during these meetings.  Defendants contend that at that time, LeBlanc communicated LECO's proposed development plans for the Legion Park property.  [*Id.*, pp. 17-19, 21-22].

According to the Defendants, LECO, through LeBlanc, made representations to the Kaplan City Council ("City Council") about the nature and quality of the planned development, and assurances were made as to the quality, type, and build of the proposed community.  [Doc. 19-6, pp. 5-6].  On May 25, 2022, the Zoning Committee – relying in good faith on LeBlanc's representations – voted to send a resolution to the Mayor and City Council to amend the zoning of Legion Park from R-1 to R-2.  [Doc. 19-3, pp. 20-22].  On June 21, 2022, the City took that recommendation and re-zoned Legion Park to R-2, imposing no formal conditions on the development of Legion Park beyond those inherent in the R-2 classification.  [Doc. 19-6, pp. 8-9].  Thereafter, on September 13, 2022, LECO acquired Legion Park from Innovesters.  [Doc. 6, p. 3].

After purchasing the property, LECO began developing Legion Park as a mobile home community.  [Doc. 15-9, ¶¶ 7-10].  To that end, LECO obtained several valid permits, including water/sewer permits, culvert permits, and project wide

permits. [*Id.*, ¶ 8]. LECO also purchased mobile homes for placement at Legion Park, with LeBlanc himself performing most, if not all, of the physical labor on the project. [*Id.*, ¶ 9]. Soon after, LECO completed the first site located at 201 Park Drive in Legion Park. [*Id.*, ¶ 10]. LECO maintains that it complied with all requirements of the R-2 zoning ordinance with respect to the installation of the first mobile unit located at 201 Park Drive. [*Id.*, ¶ 16].[1]

But according to the Defendants, community reaction to the placement of mobile units in Legion Park was immediate, and city officials were inundated with complaints from disgruntled residents of Kaplan. [Doc. 19-6, p. 10]. Kaplan's Mayor, Michael Kloesel ("Mayor Kloesel"), testified that LECO did not install mobile homes in the Legion Park subdivision, but rather, installed oilfield trailers, or "workover rig homes," with HVAC units visible on the sides. [*Id.*, p. 8]. According to Mayor Kloesel, "the phones started ringing off the hook. People were upset. Neighbors were upset. The whole City of Kaplan [was] upset. Everybody got phone calls. City employees got phone calls. You had the councilmen get phone calls from it. I got phone calls." [*Id.*, p. 10]. Mayor Kloesel testified that, because these "oilfield work trailers" had been installed on the property, rather than traditional mobile homes, he declined to authorize utilities for Legion Park. [*Id.*, pp. 24-25].

---

[1] LECO offers the testimony of Jonathan Dupuis, the city inspector, who inspected the first mobile home site at 201 Park Drive and testified that he noted no issues with the property, [Doc. 15-6, pp. 2-4], as well as the testimony of Monique Jameyson, the city permitting employee, who stated that the 201 Park Drive property passed all required inspections. [Doc. 15-4, pp. 2-4].

Thereafter, on June 20, 2023, Mayor Kloesel addressed citizen complaints at a City Council meeting.  [Doc. 19-7, Exhibit E, at 32:20-32:42, *see* manual attachment].  At the same meeting, Councilman Michael Renfrow ("Councilman Renfrow") stated his intention to introduce an ordinance to re-zone Legion Park back to an R-1 classification at the Council's next meeting due to the complaints he had received.  [*Id.*, at 34:30-35:23].  Importantly, no LECO members attended this meeting.  [*Id.*].  On June 27, 2023, Mayor Kloesel advised two LECO representatives of Councilman Renfrow's intention to introduce a re-zoning ordinance.  [Doc. 19-5, pp. 39-43].  And on July 18, 2023, the Kaplan City Council unanimously carried a vote to introduce an ordinance to re-zone Legion Park back to an R-1 classification.  [Doc. 19-3, pp. 4-6].  No LECO members attended this meeting, either.  [Doc. 19-4, p. 13].

On August 16, 2023, Kaplan's Zoning Committee held a public hearing in which it unanimously voted to consider re-zoning Legion Park from R-2 to R-1.  [Doc. 19-3, pp. 26-27].  At the Committee's next public hearing, held on September 7, 2023, ten Kaplan residents gave public comment in favor of the re-zoning to R-1, and the Zoning Committee unanimously recommended that the City Council consider re-zoning Legion Park.[2]  [*Id.*, pp. 29-30].

After receiving the Zoning Committee's recommendation, the City Council held a special meeting on October 5, 2023.  [*Id.*, pp. 7-8].  At this special meeting, two

---

[2]    Prior to the September 7, 2023, Zoning Committee hearing, Kaplan's City Clerk prepared a Public Notice for the meeting and posted it on the front door of City Hall, emailed it to a LECO Member, and laminated the poster on a stake and physically posted it on the Legion Park property.  [*Id.*, p. 31].  A LECO member confirmed receiving notice of the September 7, 2023, Zoning Committee meeting, but no representative of LECO attended this meeting.  *See* [Doc. 19-4, p. 14].

Kaplan residents gave public comment in favor of re-zoning Legion Park, and the City Council unanimously voted in favor of Councilman Renfrow's ordinance to re-zone Legion Park back to R-1. [*Id.*]. Again, no one from LECO attended this meeting. [Doc. 19-4, p. 14].

On July 22, 2024, LECO filed this suit in the Fifteenth Judicial District Court in Vermilion Parish against the City of Kaplan, Mayor Kloesel, and Councilman Renfrow, naming the Mayor and Councilman in both their official and individual capacities. [Doc. 1-1]. LECO asserts claims against Defendants under 42 U.S.C. § 1983, the Fifth and Fourteenth Amendments of the United States Constitution, and Louisiana's laws and Constitution. [*Id.*]. Specifically, LECO claims that it had a vested property right to develop Legion Park as a mobile home community and Defendants' actions were arbitrary and capricious, an unreasonable use of police powers, and an impingement upon LECO's constitutionally protected rights. [*Id.*]. The matter was removed to this Court on August 28, 2024, on the basis of federal question jurisdiction. [Doc. 1].

After completion of discovery, the parties filed the instant cross-motions for summary judgment. LECO argues in its Motion that the Kaplan City Council's re-zoning of Legion Park back to R-1 amounted to an unconstitutional taking without just compensation because LECO had a vested property right in Legion Park's R-2 zoning. [Doc. 15-1]. LECO also argues that because it was the holder of several valid and legally issued permits for the Legion Park subdivision, its substantive due process rights were violated when the City denied utilities to, and re-zoned, Legion Park. [*Id.*].

In their Motion, Defendants argue that LECO did not acquire vested property rights in Legion Park's R-2 zoning, and the City Council's vote to re-zone Legion Park was a legitimate exercise of its police power.  Defendants further argue that the denial of utilities and re-zoning of Legion Park were neither arbitrary nor capricious, and they contend that the actions and comments of Mayor Kloesel and Councilman Renfrow are protected under the First Amendment, absolute legislative immunity, qualified immunity, and statutory immunity for discretionary acts.  [Doc. 19-1].

All issues having been fully briefed by the parties, the Motions are now ripe for review.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant can show that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party."  *Deshotel v. Wal-Mart La., L.L.C.*, 850 F.3d 742, 745 (5th Cir. 2017); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor.").  But there is no genuine issue for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party[.]" *Anderson*, 477 U.S. 242.

In reviewing "cross-motions for summary judgment, [the court] examine[s] 'each party's motion independently' and view[s] 'the evidence and inferences in the

light most favorable to the nonmoving party.'" *Springboards To Educ., Inc. v. Hous. Indep. Sch. Dist.*, 912 F.3d 805, 811 (5th Cir. 2019), *quoting JP Morgan Chase Bank, N.A. v. DataTreasury Corp.*, 823 F.3d 1006, 1011 (5th Cir. 2016). "Cross-motions for summary judgment will not, in and of themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980). The rationale for this rule is that "each party moving for summary judgment may do so on different legal theories dependent on different constellations of material facts." *Bricklayers, Masons & Plasterers Int'l Union of Am., Loc. Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975). Nonetheless, "cross-motions for summary judgment … may be probative of the non-existence of a factual dispute when … they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *Petro Harvester Operating Co., L.L.C. v. Keith*, 954 F.3d 686, 700 (5th Cir. 2020) (quoting *Bricklayers*, 512 F.2d at 1023).

<u>LAW AND ANALYSIS</u>

## I.    Section 1983 and Takings Claims

In alleging that the City Council's re-zoning of Legion Park from R-2 to R-1 constitutes an unlawful taking in contravention of its constitutionally protected property rights, LECO is alleging a regulatory takings claim, both under the Fifth Amendment and the Louisiana Constitution.

### A.   Federal Takings Claim

The Takings Clause of the Fifth Amendment provides that private property shall not "be taken for public use, without just compensation." *Lingle v. Chevron U.S.A. Inc.*, 544 U.S. 528, 536 (2005) (citation omitted) (quoting Fifth Amendment). A physical taking occurs when the government "uses its power of eminent domain to formally condemn property" or when it "physically takes possession of property without acquiring title to it." *AbbVie, Inc. v. Murrill*, 166 F.4th 528, 542–43 (5th Cir. 2026). The government may also effect a taking through regulation, thereby obligating the government to provide just compensation. *Legacy Hous. Corp. v. City of Horseshoe Bay, Tex.*, 158 F.4th 636, 643 (5th Cir. 2025) (regulatory actions constitute takings if they are "functionally equivalent to the classic taking" where the government "directly appropriates private property or ousts the owner from his domain."). Where a plaintiff alleges that governmental regulation has gone "too far" and effected a taking, § 1983 supplies the cause of action through which that federal constitutional claim is asserted.

Because land-use regulations often serve legitimate public purposes, the Takings Clause requires courts to determine when regulatory action crosses the line from ordinary governance into a compensable taking. *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 123–25 (1978). *See also AbbVie,* 166 F.4th at 542–43 ("[W]hen the government ... imposes regulations that restrict an owner's ability to use his own property," courts must determine whether the restriction "goes too far."). But the Supreme Court has long recognized that zoning and land-use regulation is a classic exercise of a municipality's police power. *Penn Cent.,* 438 U.S. at 123–25. *See*

*also Texas Midstream Gas Servs. LLC v. City of Grand Prairie*, 608 F.3d 200, 207 (5th Cir. 2010) (recognizing zoning ordinances as valid exercises of municipal police power).

Accordingly, "to prevail on a takings claim, a plaintiff first must demonstrate that he has a protectable property interest." *Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 269 (5th Cir. 2012). And "[b]ecause the Constitution protects rather than creates property interests, courts must 'resort to "existing rules or understandings that stem from an independent source such as state law" to define the range of interests that qualify for protection as "property" under the Fifth and Fourteenth Amendments.'" *Id., quoting Lucas v. S.C. Coastal Council*, 505 U.S. 1003, 1030 (1992).

Once a protectable property interest is identified in a regulatory takings case, the court then considers whether the zoning law in question may be challenged as a compensable taking. To make this determination, courts evaluate the *Penn Central* three-factor balancing test, which considers: (1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action, that is, whether the action "can be characterized as a physical invasion by government" or is instead "interference aris[ing] from some public program adjusting the benefits and burdens of economic life to promote the common good." *Legacy Hous. Corp.*, 158 F.4th at 643*, quoting Penn Cent.*, 438 U.S. at 124–25. "Zoning laws are ... the classic example" of the latter. *Id.*

"Whether a regulatory taking has occurred is an 'essentially *ad hoc*, factual inquir[y]' evading any 'set formula,'" and "[t]he goal of the analysis is 'to identify regulatory actions that are functionally equivalent to the classic taking in which government directly appropriates private property or ousts the owner from his domain.'" *Id., quoting Penn Cent.*, 438 U.S. at 124 and *Lingle*, 544 U.S. at 539.

Here, Defendants argue that LECO's takings claim fails because LECO does not possess a protected property interest in Legion Park's zoning. [Doc. 19-1, pp. 15-16]. Under Louisiana law, property owners generally have no vested right in the zoning classification of their property. *Glickman v. Jefferson Par.*, 224 So. 2d 141, 144–45 (La. App. 4th Cir. 1969). But even assuming that LECO has a protected property interest in Legion Park's zoning, the Court concludes that the City Council's re-zoning of Legion Park from R-2 back to R-1 does not constitute a taking under the *Penn Central* factors.

### 1.     Economic Impact

First, the Court examines the economic impact of the City's re-zoning decision on LECO. To assess a regulation's economic impact, courts in the Fifth Circuit "compare the value that has been taken from the property with the value that remains in the property." *Hackbelt 27 Partners, L.P. v. City of Coppell*, 661 F. App'x 843, 850 (5th Cir. 2016). Generally, a land-use regulation only effects a taking of private property if the owner is denied an economically viable use of his land. *Dolan v. City of Tigard*, 512 U.S. 374, 385 (1994). And the Supreme Court has long held that "mere diminution in [the] value of the property, however serious, is insufficient to demonstrate a taking." *Concrete Pipe & Prods. of California, Inc. v. Constr.*

*Laborers Pension Tr. for S. California*, 508 U.S. 602, 645, 113 S. Ct. 2264, 2291, 124 L. Ed. 2d 539 (1993).

Here, LECO has failed to provide any evidence that the re-zoned Legion Park has no economically viable use. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687 (1999) (holding that "the issue whether a landowner has been deprived of all economically viable use of his property is a predominantly factual question."). For example, LECO has not submitted an appraisal of Legion Park since the re-zoning to R-1 or any other evidence from a property expert showing a diminution in value or an inability to develop the property at all. [Doc. 19-4, p. 14]. And while LECO contends that it cannot use Legion Park in the manner it originally desired, *i.e.*, as a mobile home community, it is well-settled that an owner's mere inability to develop the property as it wishes – standing alone – does not amount to a loss of *any* economically viable use for the property. *See, e.g., Robinson v. City of Baton Rouge*, 2016 WL 6211276, at \*41 (M.D. La. Oct. 22, 2016) ("The Fifth Amendment prohibition against taking without compensation does not guarantee the most profitable use of property, and a diminution in value, standing alone, does not establish a taking."), *citing Jackson Court Condominiums, Inc. v. City of New Orleans*, 874 F.2d 1070, 1080 (5th Cir. 1989). Thus, the first *Penn Central* factor weighs in favor of the Defendants.

### 2.  Interference with Expectations

As to the extent to which the City's re-zoning interfered with LECO's investment-backed expectations, "what is 'relevant and important in judging reasonable expectations' is 'the regulatory environment at the time of the acquisition

of the property.'" *Legacy Hous.*, 2024 WL 2867810, at *19 (W.D. Tex. Apr. 23, 2024), *report and recommendation adopted*, 2024 WL 2131484 (W.D. Tex. May 13, 2024), *aff'd*, 158 F.4th 636 (5th Cir. 2025), *citing Love Terminal Partners, L.P. v. United States*, 889 F.3d 1331, 1345 (Fed. Cir. 2018). "Not every investment-backed expectation can form the basis for a regulatory takings claim; instead, a claimant must establish interference with a reasonable investment-backed expectation." *Hackbelt 27 Partners, L.P.*, 661 F. App'x at 850. One factor that courts consider is whether the investor knows of the existing zoning. *Id.* Further, the Supreme Court has found it "quite simply untenable" that parties could "establish a 'taking' simply by showing that they have been denied the ability to exploit a property interest that they heretofore had believed was available for development." *Penn Cent.*, 438 U.S. at 130.

In his deposition, LeBlanc testified that, before the re-zoning, he told the City Council he would not purchase Legion Park unless he could place a mobile home on each lot. [Doc. 19-6, pp. 15-16]. This testimony reflects both his expectation that the property would remain zoned R-2 and his unwillingness to proceed without that zoning in place.

LECO also submits the affidavit of Megan Comeaux, who attests that, after purchasing Legion Park for $300,000, LECO invested an additional $527,336.50 in developing the property before it was re-zoned to R-1. [Doc. 15-9, ¶ 11]. LeBlanc testified that these expenditures included purchasing fill dirt, constructing pads and driveways, and making improvements to installed mobile homes, such as blocking

and framing units, pouring concrete for carports, and installing metal roofs.  [Doc. 19-4, pp. 7-10].  The Court finds that Comeaux's affidavit corroborates this testimony.

Although the Defendants argue that LECO did not have any agreements to lease or sell any of Legion Park's units when the re-zoning occurred, and that LECO has not defaulted on any contracts because of Legion Park's re-zoning back to R-1, [Doc. 19-4, p. 14], there can be no question that LECO expended money, resources, and labor to develop Legion Park as an R-2 property and that the City's re-zoning of Legion Park interfered with LECO's expenditure-backed expectations for that property.  Consequently, the Court concludes that the second *Penn Central* factor weighs in favor of LECO.

### 3.    Character of the Governmental Action

Finally, the Court considers the character of the City's action, here, the re-zoning of Legion Park.  When regulations "arise[ ] from some public program adjusting the benefits and burdens of economic life to promote the common good" they are less likely to be considered a taking.  *Legacy Hous.*, 2024 WL 2867810, at *20, *citing Penn Cent.*, 438 U.S. at 124.  Regulations that control development based "on density and other traditional zoning concerns" are the paradigm of this type of public program.  *Legacy Hous.*, 2024 WL 2867810, at *20.  Thus, the Supreme Court explained in *Penn Central* that "[z]oning laws are, of course, the classic example, ... which have been viewed as permissible governmental action even when prohibiting the most beneficial use of the property."  438 U.S. at 125.

The Defendants' briefing consistently reflects that the re-zoning decision followed significant and immediate complaints from Kaplan residents regarding the

appearance of Legion Park after the placement of the first mobile homes.  [Doc. 19-3, pp. 8, 28-30]; [Doc. 19-7, Exhibit L, at 4:51-9:21, *see* manual attachment].  Defendants cite this community backlash, as well as LeBlanc's alleged misrepresentations about his plans for the subdivision, as the reasoning behind the re-zoning.  To support this argument, Defendants cite the testimony of Mayor Kloesel, as well as minutes, audio, and video from City Council meetings where individual residents complained about the appearance of Legion Park.[3]  To the extent that these complaints dovetail with the Defendants' arguments that LECO misrepresented exactly what the subdivision would look like before moving mobile units onto the Legion Park property, the Court concludes that the latter rationale is consistent with the City's actions.  In short, LECO has offered no evidence to controvert the record evidence reflecting widespread community dissatisfaction with Legion Park.  And, importantly, no representative from LECO even attended the City Council meetings to address how LeBlanc's planned mobile home subdivision would promote the public good.  Therefore, the

---

[3]        Defendants offer the following evidence to support their argument: (i) video and audio from the June 20, 2023, City Council meeting, at which time Kaplan resident Doug David stated that he was concerned about additional traffic congestion in the area of Legion Park; delayed development of the property itself; and economic concerns for the City due to an influx of residents to the mobile home community, who he believed would not support locally owned business [Doc. 19-7, Exhibit L, at 0:04:51-0:08:36, *see* manual attachment]; (ii) additional video and audio recordings taken from the June 20, 2023, City Council meeting, at which Todd Williams, an adjacent property owner, voiced concerns about a decrease in the value of his adjacent property and the proximity of the proposed mobile home subdivision to the long-standing cemetery where members of his family are buried [*Id.* at timestamp 0:08:38-0:09:21]; and (iii) minutes of the October 5, 2023, Special Meeting of the City Council, where the vote to re-zone the Legion Park property back to R-1 from R-2 was unanimously passed after further comment from Mr. David and Mr. Williams, who again spoke out against keeping the Legion Park property zoned as an R-2 property.  [Doc. 19-3, p. 0008].  The Defendants also offer evidence showing that ten Kaplan residents gave public comment and spoke in favor of the rezoning to R-1 at the September 7, 2023, Zoning Committee meeting. [*Id.*, pp. 29-30].

Court concludes that LECO has conspicuously failed to provide evidence or otherwise demonstrate that Kaplan's zoning decisions amount to anything more than a permissible adjustment of the benefits and burdens of economic life to promote the common good. Accordingly, the third and final *Penn Central* factor weighs heavily in favor of the Defendants.

Here, the Plaintiff has failed to submit summary judgment evidence creating a factual dispute bearing on the application of the *Penn Central* factors to this case. And taken holistically, the Court finds that the *Penn Central* factors weigh in Defendants' favor. LECO's federal takings claim therefore fails as a matter of law.

### B.    State Takings Claim

The analysis of a takings claim under Louisiana constitutional law is substantially similar to the analysis of a takings claim under federal constitutional law. *See, generally, Robert v. State*, 327 So. 3d 546 (La. App. 4th Cir. 2021). Under Louisiana law, as under federal law, a land use regulation constitutes a taking when the regulation destroys a major portion of the property's value or eliminates the practical economic use of the property. *Layne v. City of Mandeville*, 633 So. 2d 608, 612 (La. App. 1st Cir. 1993) (a governmental taking may occur in the form of zoning or re-zoning a property). But a regulation does not amount to a taking merely because an owner is unable to develop a property to its maximum economic potential. *See, e.g., Major v. Pointe Coupee Par. Police Jury*, 978 So. 2d 952, 956 (La. App. 1st Cir. 2007) (although presented on a motion to dismiss, court held that plaintiffs failed to state a cause of action for regulatory taking against city council, which had passed zoning resolution banning FEMA trailer parks on parish property after hurricanes,

where court found that zoning ordinance did not destroy all viable uses of the property in question).

Here, LECO has offered no evidence showing that the City of Kaplan's re-zoning action deprives it of "all practical use" of its property, nor has LECO demonstrated that its inability to develop Legion Park as a mobile home community amounts to a loss of all economic viability.  LECO offers no evidence that Legion Park cannot still be developed as an R-1 community.  And, as noted above, LECO has not submitted evidence of a substantial decrease in Legion Park's value.[4]

Thus, because LECO has not shown that Legion Park's re-zoning destroyed a major portion of the property value or eliminated practical economic uses of the property, its state law takings claim also fails.

## II.    Substantive Due Process Claims

"The claim that a person is entitled to substantive due process means ... that state action which deprives [a person] of life, liberty, or property must have a rational basis – that is to say, the reason for the deprivation may not be so inadequate that the judiciary will characterize it as 'arbitrary.'"  V*ineyard Inv., LLC v. City of Madison, Miss.*, 757 F. Supp. 2d 607, 611–12 (S.D. Miss. 2010), *aff'd sub nom. Vineyard Invs., L.L.C. v. The City Of Madison, Miss*, 440 F. App'x 310 (5th Cir. 2011), *citing Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1231 (5th Cir. 1985). Whether

---

[4]      Plaintiff's contention that strict scrutiny applies is without merit.  Even considering that LECO obtained valid permits and relied upon them, such reliance bears only on whether a vested right exists – not on the level of constitutional scrutiny – and land-use regulations are reviewed under a highly deferential rational basis standard.  *See Palermo Land Co., Inc. v. Planning Comm'n of Calcasieu Par.*, 561 So. 2d 482, 492–93 (La. 1990); *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).

the government action in question is rationally related to a legitimate governmental interest is a question of law for the court. *Simi Inv. Co. v. Harris Cnty., Tex.*, 236 F.3d 240, 249 (5th Cir. 2000). LECO alleges substantive due process claims against Defendants under both federal and state law. Because LECO's state substantive due process claim is analyzed under federal standards, the Court's analysis applies equally to both claims.[5]

Although framed in terms of arbitrariness, LECO's substantive due process claim merely repackages its regulatory takings claim, without adding new or distinct facts to support the former. And when a substantive due process claim: (i) alleges as its injury the same economic impact of the land-use regulation, and (ii) the challenged conduct is the same zoning decision at issue in the takings claim, courts ordinarily find that the substantive due process claim is subsumed under the takings claim. *See, generally, John Corp. v. City of Houston*, 214 F.3d 573, 582–83 (5th Cir. 2000), *citing Graham v. Connor,* 490 U.S. 386 (1989).

Here, LECO claims that the City's denial of utilities and re-zoning of Legion Park were arbitrary and capricious. But even assuming that both: (i) LECO identifies a protectable property interest in the re-zoning of Legion Park by virtue of its validly and legally issued permits, and (ii) the City of Kaplan's actions are appropriately

---

5       While Louisiana takings claims under Article I, § 4 of the Louisiana Constitution are governed by state-specific inverse condemnation doctrines, Louisiana courts recognize the substantive due process guarantee in Article I, § 2 and often look to federal substantive due process jurisprudence for guidance where appropriate. *Fields v. State Through Dep't of Pub. Safety & Corr.*, 714 So. 2d 1244, 1250 (La. 1998) (federal jurisprudence is relevant in determining the nature and extent of La. Const. Art. I, § 2's due process protection); *Theriot v. Terrebonne Par. Police Jury*, 436 So. 2d 515, 520 (La. 1983) (recognizing the similarity of substantive due process analysis under federal and state constitutions).

considered under the more stringent "adjudicative" standard for government actions,[6] deferential rational basis review requires only that the re-zoning of Legion Park be rationally related to a legitimate government interest. *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir. 1996).

Moreover, the Fifth Circuit has "long insisted that review of municipal zoning is within the domain of the states, the business of their own legislatures, agencies, and judiciaries, and should seldom be the concern of federal courts." *Id.*, *citing Shelton,* 780 F.2d at 477. And rational basis review under "the Due Process Clause does not empower the judiciary to sit as a superlegislature to weigh the wisdom" or desirability of state legislative policy determinations. *Exxon Corp. v. Governor of Maryland,* 437 U.S. 117, 124 (1978), *citing Ferguson v. Skrupa,* 372 U.S. 726, 731 (1963). Furthermore, even in the context of individualized, adjudicative land-use decisions, the Fifth Circuit applies highly deferential rational basis review. Under this analysis, where the propriety of the decision is at least debatable, the action cannot meet this demanding standard. *See, e.g.*, *Simi Inv. Co.*, 236 F.3d at 249–51 (5th Cir. 2000); *FM Props.*, 93 F.3d at 174.

---

[6] The City Council's regulatory decision to re-zone Legion Park was adjudicative in nature. First, one of Mayor Kloesel's motivations to consider re-zoning Legion Park was that LECO allegedly "misrepresented" the quality and appearance of the mobile homes that would be placed there. [Doc. 19-6, p. 5]. Second, Kaplan citizens' complaints specifically concerned Legion Park, such as the impact on traffic, whether Legion Park residents would shop at local Kaplan stores, and the appearance of the homes to be placed at Legion Park. [Doc. 19-7, Exhibit L, at 4:51-9:21, *see* manual attachment]; [Doc. 19-3, pp. 28-29]. Finally, Councilman Renfrow stated that he felt "fooled" by LECO because of the allegedly poor quality of the mobile homes LECO brought to Legion Park. [Doc. 19-7, Exhibit E, at 34:30-35:22, *see* manual attachment]. Thus, the facts motivating Defendants' actions were specific to LECO as an entity, as they related to the "particular … situation" surrounding Legion Park. *Hughes v. Tarrant Cnty. Tex.*, 948 F.2d 918, 921 (5th Cir. 1991).

Thus, as to LECO's claim that the City Council's re-zoning of Legion Park has no rational relationship to any legitimate government interest, the Court finds that "the true purpose" of the re-zoning is irrelevant for rational basis analysis. "The question is only whether a rational relationship exists between the [policy] and a *conceivable* legitimate governmental objective." *FM Props.*, 93 F.3d at 174–75. If the question is at least debatable, there is no substantive due process violation. *Id., citing Vill. of Euclid v. Ambler Realty Co.,* 272 U.S. 365, 388 (1926). *See also DeSelle v. Lafayette City-Parish Consol. Gov't.*, 2026 WL 701676, at *1–2 (W.D. La. Mar. 12, 2026), *quoting Zahn v. Bd. of Pub. Works*, 274 U.S. 325 (1927) (when a claimant makes even "fairly debatable" allegations that a local land use determination is "unreasonable, arbitrary or [an] unequal exercise of power," a court is not to "substitute its judgment for that of the legislative body charged with the primary duty and responsibility of determining the question.").

Here, the same record evidence that defeats LECO's takings claim also forecloses its substantive due process challenge. The City's decision to re-zone Legion Park to R-1 followed substantial and immediate complaints from residents regarding the appearance of the subdivision after the placement of mobile units. [Doc. 19-3, pp. 8, 28-30]; [Doc. 19-7, Exhibit L, at 4:51-9:21, *see* manual attachment]. Defendants have therefore presented evidence that the re-zoning was undertaken in response to community concerns and for aesthetic and land-use compatibility reasons, which are interests that are plainly legitimate exercises of the City's police power. On this record, the Court cannot conclude that the Defendants' actions with respect to Legion Park were arbitrary or capricious under federal law. *See Palermo Land Co.*, 561 So.

2d at 492 ("If it appears appropriate and well-founded concerns for the public could have been the motivation for the zoning ordinance, it will be upheld."). Accordingly, this Court will not supplant its own judgment for that of the legislative authority, and Defendants are entitled to summary dismissal of LECO's federal and state substantive due process claim.

## III.   Claims Against Mayor Kloesel and Councilman Renfrow

In its Complaint, LECO alleges that "Defendants, Kloesel and Renfrow … were representatives of the Defendant, City of Kaplan, and these Defendants were acting under color of state law and authority granted to them by the said local government authority," and further, that "Defendants Kloesel and Renfrow … were acting outside of and/or beyond the scope of their authority on behalf of Defendant, City of Kaplan, and are thus individually liable for the tort, delicts, and intentional harm visited upon Petitioner." [Doc. 1-1, ¶¶ 1, 51-53]. LECO's claims against Mayor Kloesel and Councilman Renfrow appear to be alleged under 42 U.S.C. § 1983 and state law in both their individual and official capacities.

### A.   Official Capacity Claims

As an initial matter, suits against municipal officials in their official capacity are simply another way of alleging municipal liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). So "[w]here official capacity claims are duplicative of claims against the municipality itself, the official capacity claims should be dismissed." *Howell v. Town of Ball*, 2012 WL 3962387, at *4 (W.D. La. Sept. 4, 2012), *citing Castro Romero v. Becken*, 256 F.3d 349 (5th Cir. 2001). Similarly, under

Page 20 of 22

Louisiana law, "an official capacity suit is [an] alternative to suing the entity itself." *See, e.g., Edmonds v. Dep't of Pub. Works*, 390 So. 3d 917, 924 (La. App. 4th Cir. 2024).

Considering the foregoing, the claims alleged against Mayor Kloesel and Councilman Renfrow in their official capacities are subject to dismissal.

### B. Individual Capacity Claims

Review of the Complaint shows that LECO's "claims" alleged against Mayor Kloesel and Councilman Renfrow in their individual capacities do not clearly plead any discrete causes of action. Instead, LECO alleges theories of liability and status allegations that would support claims pled elsewhere, but no underlying constitutional violation is identified. And to the extent that LECO has pled claims against Mayor Kloesel and Councilman Renfrow for unconstitutional takings or violations of due process, those claims fail for the same reason that the takings and due process claims alleged against the City of Kaplan fail.

Additionally, Mayor Kloesel and Councilman Renfrow assert qualified immunity as a defense for LECO's claims against them in their individual capacities. [Doc. 19-1, pp. 28-38]. "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hughes v. Garcia*, 100 F.4th 611, 618 (5th Cir. 2024), *quoting Malley v. Briggs*, 475 U.S. 335, 341 (1986). Under federal law, to overcome qualified immunity, a plaintiff must show: "(1) that the officer 'violated a federal statutory or constitutional right' and (2) that 'the unlawfulness of the[] conduct was clearly established at the time.'" *Id., quoting Ramirez v. Escajeda*, 921 F.3d 497, 499 (5th Cir. 2019). And under state law, "a personal capacity suit [i]s one that 'seek[s] to impose personal liability upon a government official for actions he

takes under color of state law causing the deprivation of a constitutional right.'" *Edmonds*, 390 So. 3d at 924, *quoting Driscoll v. Stucker*, 893 So. 2d 32, 52 (La. 2005).

Here, as set forth above, LECO has failed to put forth sufficient evidence to demonstrate that it has suffered a deprivation of its constitutional rights. The re-zoning of Legion Park does not amount to a taking under federal or state law, nor have Defendants violated federal or state substantive due process because Legion Park's re-zoning was neither arbitrary nor capricious. Accordingly, dismissal of LECO's claims against Mayor Kloesel and Councilman Renfrow in their individual capacities is warranted.

## CONCLUSION

Considering the foregoing,

IT IS HEREBY ORDERED that Defendants' MOTION FOR SUMMARY JUDGMENT [Doc. 19] is GRANTED; LECO's MOTION FOR SUMMARY JUDGMENT [Doc. 15] is DENIED, and LECO's claims are DENIED AND DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 20th day of March 2026.

_____
DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE